08 CV 6846

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re: FOSAMAX PRODUCTS                           MDL 1789
LIABILITY LITIGATION
-----------------------------------------------------------X

KATHY BRITTAIN and LARRY BRITTAIN

        Plaintiffs,                              Civil Action No.

v.

MERCK & CO., INC.,                                COMPLAINT FOR DAMAGES
                                                  (Products Liability-Personal Injury)

        Defendant.                               JURY TRIAL DEMANDED
-----------------------------------------------------------X

RECEIVED
JUL 31 2008
U.S.D.C. S.D. N.Y.
CASHIERS

## PLAINTIFFS' ORIGINAL COMPLAINT

KATHY BRITTAIN and LARRY BRITTAIN (hereinafter "Plaintiffs"), by and through their undersigned counsel, file suit against MERCK & CO., INC (hereinafter "Defendant"), and would show the Court as follows:

1.     This is a civil action brought on behalf of Plaintiffs regarding personal injuries and damages that resulted from Plaintiff Kathy Brittain's ingestion of the drug Fosamax®. Fosamax® was designed, manufactured, tested, marketed, distributed, and sold to Plaintiff by Defendant and/or its representatives.

### I.

### PARTIES

2.     Plaintiff Kathy Brittain is a citizen and resident of the State of Oklahoma, residing in Quinton, Pittsburg County, Oklahoma.

3.     Plaintiff Larry Brittain is the husband of Plaintiff Kathy Brittain and is also a citizen and resident of the State of Oklahoma, residing in Quinton, Pittsburg County, Oklahoma.

4.    Defendant Merck & Co, Inc. is a New Jersey corporation with its principal place of business at One Merck Drive, Whitehouse Station, New Jersey 08889-0100. Service of process may be accomplished by serving Merck & Co., Inc.'s Chief Financial Officer, Richard T. Clark, at Merck's principal office address of 1 Merck Dr., Whitehouse Station NJ 08889.

5.    At all relevant times herein, Defendant, through its agents, servants and employees, was the designer, manufacturer, marketer, advertiser, distributor, and seller of the prescription medication, Fosamax® (hereinafter "Fosamax"), which is the brand name of alendronate sodium.

## II.

### JURISDICTION AND VENUE

6.    Jurisdiction of this Court exists, pursuant to 28 U.S.C. § 1332, because Plaintiffs are citizens of a state other than the state in which Defendant is incorporated and/or has its principal place of business, and the matter in controversy exceeds seventy-five thousand and no/100 dollars ($75,000.00), exclusive of interest and costs.

7.    This action includes claims for injuries to Plaintiffs caused by Plaintiff Kathy Brittain's ingestion of Fosamax and therefore should be a part of Multidistrict Litigation No. 1789, In Re: Fosamax Products Liability Litigation, United States District Court, Southern District of New York. Venue of this case is appropriate in the United States District Court for the Eastern District of Oklahoma pursuant to 28 U.S.C. § 1391.  Plaintiffs state that but for MDL 1789 Case Management Order No. 3 permitting direct filing of her case into the United States District Court for the Southern District of New York, Plaintiffs would have filed this case in the  United States District Court for the Eastern District of Oklahoma.  Plaintiffs therefore respectfully request that at

the time of transfer of this action back to the trial court for further proceedings, this case be transferred to United States District Court for the Eastern District of Oklahoma.

## III.

### CONDITIONS PRECEDENT

8.      All conditions precedent have been performed or have occurred.

## IV.

### FACTUAL BACKGROUND

**A.      Fosamax Information**

9.      Fosamax was approved by the United States Food & Drug Administration ("FDA" herein) in September 1995.  FDA-approved uses include the treatment of Paget's Disease and the prevention and treatment of osteoporosis.

10.      Fosamax falls within a class of drugs known as bisphosphonates, which are used to treat bone conditions.  Other drugs within this class, such as Aredia and Zometa, are also used as an adjunct to chemotherapy, but are not indicated for use in non-cancerous conditions such as osteoporosis.

11.      There are two classes of bisphosphonates: nitrogenous (containing nitrogen) and non-nitrogenous (no nitrogen).   Fosamax, Aredia, and Zometa are included in the nitrogenous bisphosphonates.

12.      Fosamax is the world's top-selling bisphosphonate. It has been Defendant's second best-selling drug, with sales in 2005 of $3.2 billion, according to the Associated Press. In the U.S. alone, more than 22 million prescriptions were written in 2005, according to the drug research firm IMS Health.

**B.    Defendant's Failure to Warn of the Dangers of Fosamax**

13.    Throughout the 1990s and 2000s, medical articles and studies appeared reporting the frequent occurrence of osteonecrosis of the jaw ("ONJ" herein) in cancer patients using nitrogenous bisphosphonates, i.e., Aredia and Zometa.  These drugs also have known gastrointestinal side effects which also occur with Fosamax.  Defendant knew or should have known that Fosamax, as a nitrogenous bisphosphonate, shared a similar adverse event profile to the other drugs within this specific subclass.

14.    Defendant knew or should have known that bisphosphonates, including Fosamax, inhibit endothelial cell function; inhibit vasculariation of the affected area; and induce ischemic changes to patients' lower and upper jaws (mandibles and maxillae) and that these ischemic changes appear to be cumulative in nature.

15.    Defendant also knew or should have known that these factors combine to create a compromised vascular supply in the affected area. As a result, a minor injury or disease can turn into a non-healing wound. That, in turn, can progress to widespread necrosis (bone death) and osteomyelitis (inflammation of bone marrow).

16.    Dentists are now being advised by dental associations to refrain from using invasive procedures (such as drilling a cavity) for any patient on Fosamax.

17.    Shortly after Fosamax was released, the FDA began receiving reports of ONJ and other dental complications among Fosamax users, indicating that Fosamax shared the class effects of the other nitrogenous bisphosphonates.

18.    Despite this knowledge, Defendant failed to implement further studies regarding the risk of ONJ relative to Fosamax; Defendant proposed further uses of Fosamax, such as Fosamax-D; and sought to extend the exclusivity period of Fosamax through 2018.

19.    ONJ is a serious medical event involving severe deterioration and decompensation of the jaw bones, is very difficult to treat once the patient is symptomatic, and can result in severe permanent disability and death.

20.    By 2002 or earlier, Defendant knew or should have known that physician reports of Aredia, another drug in the same class as Fosamax, patients suffering from ONJ showed a possible causal link between the use of ONJ and bisphosphonates.

21.    Medical research published in 2004 revealed a link between ONJ and the use of bisphosphonates Aredia and Zometa. According to the report, "The jaw complications presented ... had a major negative effect on the quality of daily life for each of these patients" and "bisphosphonates may be at least partially responsible." Ruggiero, et al., "Osteonecrosis of the Jaws Associated with the Use of Bisphosphonates: A Review of 63 Cases," *Journal of Oral and Maxillofacial Surgery*, vol. 62, p. 533 (2004).

22.    In September 2004 and May 2005, the manufacturer of bisphosphonates Aredia and Zometa sent warnings to health care professionals regarding the risk of ONJ associated with these drugs. Warnings were added to the Aredia and Zometa labels in August and November 2004, respectively.

23.    On August 25, 2004, the FDA posted its Office of Drug Safety Postmarketing Safety Review on bisphosphonates (specifically Aredia, Zometa, Actonel, and Fosamax). This was an

epidemiologic review of the FDA adverse events database conducted by the FDA's Division of Drug Risk Evaluation.

24.    Based on their review, the FDA observed that the risk of ONJ was not confined to bisphosphonates used for chemotherapy, but rather, was a class effect which specifically extended to the oral bisphosphonate, Fosamax.

25.    As a result, the FDA recommended and stated that Defendant should amend the Fosamax labeling to specifically warn about the ONJ risk.

26.    It was not until nearly the end of 2006 that Defendant finally heeded the FDA's recommendation, but by then, many Fosamax patients had already been using the drug for years, many of them not thinking of the need to re-read their drug labels each time a Fosamax refill was obtained. Additionally, the ONJ warning on the revised Fosamax label is deeply embedded in the twenty-three (23) page label insert.

27.    Despite Defendant's knowledge about the increased risk of ONJ and other serious dental and oral complications in Fosamax patients, Defendant continues to defend Fosamax and minimize unfavorable findings rather than adequately and sufficiently warn patients and the medical community.

**C.    Plaintiff Kathy Brittain's Use of Fosamax and Resulting Injury**

28.    Plaintiff Kathy Brittain used Fosamax as prescribed and in a foreseeable manner from approximately August 15, 2998 through November 2005 for the treatment of osteoporosis.

29.    Plaintiff Kathy Brittain would not have used Fosamax had Defendant properly and adequately disclosed the risks associated with the drug. Alternatively, if properly and adequately warned by Defendant, Plaintiff Kathy Brittain would have at least known the precursor events of

ONJ and other serious oral and dental conditions resulting from Fosamax use, and she would have then been able to avoid the clinical manifestation of the symptoms as they currently exist.

30.    At all relevant times herein, there were safer alternative products available to consumers, including Plaintiff Kathy Brittain, to prevent and treat osteoporosis.

31.    Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiff Kathy Brittain and her physicians the true and significant risks associated with taking Fosamax.

32.    As a result of Defendant's actions, for many years, Plaintiff Kathy Brittain and her prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence, that Plaintiff had been exposed to the risks identified in this complaint, and that those risks were the direct and proximate result of Defendant's acts, omissions, and misrepresentations.

33.    As a direct and proximate result of using Fosamax, Plaintiff Kathy Brittain suffered severe jaw bone deterioration, thereby leading to osteonecrosis of the jaw in approximately August 2006.

## V.

## EQUITABLE TOLLING OF APPLICABLE STATUTES OF LIMITATIONS

34.    The running of any statute of limitations has been tolled by reason of Defendant's fraudulent concealment and by the inherently undiscoverable nature of Plaintiffs' injuries.

35.    Defendant, through its affirmative misrepresentations and omissions, actively concealed from Plaintiffs and Plaintiff Kathy Brittain's prescribing physicians the true risks associated with taking Fosamax. As a result of Defendant's actions, Plaintiffs and the prescribing

physicians, were unaware and/or could not have reasonably known or learned that Plaintiff Kathy Brittain had been exposed to the risks alleged herein and that those risks were the direct and proximate result of Defendant's acts and omissions.

36.    Furthermore, Defendant is estopped from relying on any statute of limitations because of its fraudulent and/or intentional concealment of the true character, quality and nature of Fosamax. Defendant was under a duty to disclose the true character, quality and nature of Fosamax because this was non-public information over which the Defendant had and continues to have exclusive control, and because the Defendant knew that this information was not available to Plaintiffs or the medical providers. To this day, Defendant has still not sufficiently and adequately warned its users and medical providers of its drugs of the true extent of the risks involved with Fosamax use.

37.    Plaintiffs had no knowledge that Defendant was engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment by Defendant, Plaintiffs could not have reasonably discovered the wrongdoing at any time prior. Also, the economics of this fraud should be considered. Defendant had the ability to spend and did spend enormous amounts of money in furtherance of its purpose of marketing and promoting a profitable drug, notwithstanding the known or reasonably known risks. Plaintiffs and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and were forced to rely solely on Defendant's representations.

38.    Furthermore, the nature of Plaintiffs' injuries and their relationship to Fosamax use was inherently undiscoverable. Consequently, the discovery rule should be applied to toll the running of the statute of limitations until Plaintiff discovered, or by the exercise of reasonable diligence and intelligence should have discovered, that she had a basis for an actionable claim.

8

Plaintiffs did not have knowledge of facts that would lead a reasonable person to investigate and discover Defendant's tortious conduct. Under appropriate application of the discovery rule, Plaintiffs' suit is filed well within the applicable statutory limitations period.

## VI.

## CAUSES OF ACTION

### Count I:  Negligence

39.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

40.    Defendant had a duty to exercise reasonable or ordinary care in designing, testing, developing, manufacturing, labeling, marketing, distributing and selling Fosamax, including a duty to ensure that consumers, like Plaintiff Kathy Brittain, did not suffer unreasonable adverse side effects such as ONJ, and a duty to warn consumers, including Plaintiff Kathy Brittain, of the serious risks associated with Fosamax use.

41.    Defendant breached its legal duty by not exercising due care. Defendant knew or should have known that Fosamax created an unreasonable risk of ONJ and despite this knowledge, continued to market, distribute, and sell Fosamax to the public, including Plaintiff. Further, Defendant failed to conduct proper testing and failed to timely and adequately warn and instruct consumers, including Plaintiff Kathy Brittain, about the risk of suffering serious harm from Fosamax use.

42.    Defendant's conduct as described herein constitutes the violation of statutes, ordinances, and/or rules and regulations, including those promulgated by the FDA. Said statutes, ordinances, rules and regulations were designed to protect the health, safety, and welfare of the

general public, including Plaintiff Kathy Brittain, from injuries such as those caused by Fosamax. Defendant had no excuse for its violating conduct and said conduct proximately caused Plaintiff Kathy Brittain's personal injuries complained of herein.

43.    As a direct and proximate cause of Defendant's negligence in designing, testing, developing, manufacturing, labeling, marketing, distributing and selling Fosamax, Plaintiffs have suffered and will continue to suffer injuries and monetary damages.

## Count II:  Strict Liability - Design Defect

44.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

45.    Fosamax, as designed, manufactured and sold by Defendant, was placed into the stream of commerce by Defendant in a defective and unreasonably dangerous condition, taking into consideration the utility of the product and the risks involved with the drug's use.

46.    Fosamax, as designed, manufactured and sold by Defendant, was defective in design or formulation in that its foreseeable risks exceeded the benefits associated with the design or formulation.

47.    Fosamax, as designed, manufactured and sold by Defendant, was expected to reach and did reach consumers, including Plaintiff Kathy Brittain, without substantial change or alteration of the product.

48.    Plaintiff Kathy Brittain used Fosamax as prescribed and in a manner normally intended, recommended, promoted, and marketed by Defendant.  Despite this, Fosamax failed to perform safely.

49.    Fosamax, as designed, manufactured and sold by Defendant, was defective due to inadequate testing.

50.    As a direct, producing, and proximate result of the defective condition of Fosamax as designed, tested, developed, manufactured, marketed, and sold by Defendant, Plaintiffs have suffered and will continue to suffer injuries and monetary damages.

### Count III: Strict Liability - Failure to Warn

51.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

52.    Defendant's marketing of Fosamax was defective because Defendant failed to give timely and adequate warnings of the dangers of Fosamax that were known or should have been known by Defendant, including ONJ; and/or because Defendant failed to give adequate instructions to avoid such dangers, which failure rendered Fosamax unreasonably dangerous as marketed.

53.    As a direct, producing, and proximate result of Defendant's failure to timely and properly warn physicians and consumers, Plaintiffs have suffered and will continue to suffer injuries and monetary damages.

### Count IV: Breach of Express Warranty

54.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

55.    Defendant expressly warranted, by and through statements made by Defendant or its authorized agents, that Fosamax was safe, effective, and fit for its intended use.

56.    Plaintiff Kathy Brittain and her physicians relied on the skill, judgment and representations of Defendant.

57.     Fosamax did not conform to Defendant's express warranties in that it was not safe and

fit for its intended use because it caused serious and permanent adverse side effects, including ONJ.

58.     As a direct and proximate result of Defendant's breach of its express warranties,

Plaintiffs have suffered and will continue to suffer injuries and monetary damages.

### Count V:  Breach of Implied Warranty

59.     Plaintiffs repeat, reiterate and re-allege each and every allegation contained in this

Complaint with the same force and effect as if fully set forth herein.

60.     Defendant impliedly warranted to Plaintiffs and the physicians that Fosamax was of

merchantable quality and was safe and fit for its intended use.

61.     Plaintiffs and their physicians relied on Defendant's skill and judgment.

62.     Fosamax was not of merchantable quality or safe and fit for its intended use in that

it causes, and did cause to Plaintiff Kathy Brittain, serious adverse side effects, including ONJ.

63.     As a direct and proximate result of Defendant's breach of its implied warranties,

Plaintiffs were caused to suffer and will continue to suffer injuries and monetary damages.

### Count VI: Deceptive Trade Practices

64.     Plaintiffs repeat, reiterate and re-allege each and every allegation contained in this

Complaint with the same force and effect as if fully set forth herein.

65.     Defendant engaged in commercial conduct by selling Fosamax.

66.     Defendant misrepresented, omitted, and/or concealed material information regarding

Fosamax by failing to disclose known risks. Defendant engaged in unfair, unconscionable, deceptive

and/or fraudulent acts or practices when it failed to timely and adequately warn consumers and the

medical community of the safety risks associated with Fosamax.  By failing to adequately disclose

12

the known dangers and risks of Fosamax, Defendant engaged in unfair and deceptive consumer-oriented acts.

67.    Reasonable consumers, including Plaintiffs, were injured by Defendant's unfair and deceptive acts and/or practices. As a direct and proximate result of Defendant's deceptive, unfair, unconscionable and fraudulent conduct, Plaintiffs have suffered and will continue to suffer personal injuries and economic damages.

68.    Furthermore, Defendant's conduct was committed knowingly, willfully, and/or intentionally, thereby entitling Plaintiffs to three times the actual damages sustained and such other relief as the court considers necessary and proper, in accordance with the applicable law.

### Count VII: Fraudulent Misrepresentation

69.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

70.    Defendant, in the course of its business, fraudulently represented to the medical community, Plaintiffs, and the general public that Fosamax had been adequately tested and was a safe and effective drug. Said representation is false and is material to the facts and injuries alleged herein.

71.    At the time, Defendant knew said representation was false, or made said representation recklessly, as a positive assertion, and without knowledge of its truth. During the time that Plaintiff Kathy Brittain was exposed to Fosamax, Defendant knew or should have known that Fosamax had not been adequately tested, was defective in nature, and did not carry adequate warnings and instructions.

13

72.     Defendant made said representations with the intent of defrauding and deceiving the general public, Plaintiffs, and the medical community so as to increase sales of Fosamax. This shows Defendant's callous and reckless indifference to the health, safety, and welfare of Plaintiffs and the general public.

73.     Plaintiff Kathy Brittain reasonably relied on Defendant's false representations in choosing to ingest Fosamax.

74.     As a result of Defendant's fraudulent representations, Plaintiffs have suffered and will continue to suffer from serious personal injuries and monetary losses.

### Count VIII: Negligent Misrepresentation

75.     Plaintiffs repeats, reiterates and re-alleges each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

76.     Defendant, in the course of its business, made false representations to the medical community, Plaintiff, and the public in general that Fosamax was a safe and effective drug.

77.     Defendant, individually, and through its agents, representatives, distributors and/or employees, negligently misrepresented material facts about Fosamax, in that it made such misrepresentations when it knew, or reasonably should have known, of the falsity of such representations. Alternatively, Defendant made such misrepresentations without exercising due care to ascertain the accuracy of said representations.

78.     Defendant supplied false information for the guidance of others. Defendant, through its misrepresentations, intended to induce reliance by Plaintiffs, other consumers, and the medical community.

14

79.    Plaintiff Kathy Brittain and her physicians justifiably relied on Defendant's misrepresentations.

80.    As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiffs have suffered and will continue to suffer injuries and monetary losses.

### Count IX: Fraud and Deceit

81.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

82.    Defendant conducted research and used the drug Fosamax as part of their research.

83.    As a result of Defendant's research and testing, or lack thereof, Defendant distributed blatant and intentionally false information including, but not limited to, assuring the public, Plaintiffs, the medical community, and/or the FDA that Fosamax was safe to use for the treatment and prevention of osteoporosis.

84.    As a result of Defendant's research and testing, or lack thereof, Defendant intentionally omitted certain results of testing and research to the public, Plaintiffs, the medical community, and/or the FDA.

85.    Defendant had a duty to disseminate truthful information and a parallel duty not to deceive the public, Plaintiffs, the medical community or the FDA.

86.    The information distributed by Defendant to the public, Plaintiffs, the medical community, and/or the FDA included, but was not necessarily limited to, reports and press releases and contained material representations of fact and/or admissions.

87.    The information distributed by Defendant to the public, Plaintiffs, the medical community and/or the FDA intentionally included representations that Fosamax was safe to treat and prevent osteoporosis and was not injurious to the health and/or safety of its intended users.

88.    The prior-mentioned representations are material and were false and misleading.

89.    Defendant knew the prior-mentioned representations were false and would be misleading.

90.    Upon information and belief, Defendant intentionally suppressed, ignored, and disregarded test results unfavorable to the Defendant, as well as results that demonstrated that Fosamax  was not safe as a means to treat and prevent osteoporosis.

91.    In making the foregoing false representations, Defendant intended to deceive and defraud the public, Plaintiffs, the medical community, and the FDA.  Defendant did so to gain the public's, Plaintiffs', and the medical community's confidence by falsely ensuring that Fosamax was safe and fit for its intended use.  Defendant also did so to induce the medical community to recommend Fosamax, and to induce the public, including Plaintiff Kathy Brittain, to use Fosamax.

92.    Defendant made claims and representations in its documents submitted to the FDA, the public, and Plaintiffs that Fosamax did not present serious health and/or safety risks.

93.    When Defendant made the aforementioned representations, Defendant knew said representations were false.

94.    Defendant willfully and intentionally failed to disclose material facts regarding the dangerous and serious safety concerns of Fosamax by concealing and suppressing said facts.

95.    Defendant willfully and intentionally failed to disclose the truth, failed to disclose material facts, and made false representations with the purpose and design of deceiving and lulling Plaintiffs into a sense of security so that Plaintiff Kathy Brittain would rely on the representations and purchase, use, and rely on Fosamax and/or that her health care providers would do the same.

96.    Plaintiffs believed Defendant's representations to be true at the time they were made and reasonably relied on said representations.

97.    At the time the representations were made, Plaintiffs did not know the truth and could not have discovered the truth using due diligence, regarding the dangerous and serious health and/or safety concerns of Fosamax.

98.    Defendant's aforementioned conduct constitutes fraud and deceit and was committed and/or perpetrated willfully, wantonly, and/or purposefully on Plaintiffs.

99.    As a result of Defendant's foregoing acts and omissions, Plaintiffs have suffered and will continue to suffer personal injuries and monetary losses.

### Count X: Loss of Consortium

100.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

101.    At all times relevant hereto, Plaintiff Kathy Brittain was married to Plaintiff Larry Brittain.

102.    As a direct and proximate result of Defendant's wrongful conduct as described herein, Plaintiff Larry Brittain has been deprived of the companionship, society, love, affection, consortium, care, protection, services, and emotional support of his injured spouse, and has otherwise suffered loss, the extent of which will be more fully adduced at trial.

### Count XI: Loss of Services

103.    Plaintiffs repeat, reiterate and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

104.    As a direct and proximate result of Defendants' wrongful conduct as described herein, Plaintiff Kathy Brittain suffered severe personal injuries which impaired her ability to perform certain household and domestic duties and caused her spouse to suffer from a loss of said services.

105.    Plaintiff Larry Brittain is entitled to and seeks just compensation for the loss of his spouse's services, the extent of which will be more fully adduced at trial.

## VII.

## DAMAGES

### A.    Compensatory Damages

106.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

107.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff Kathy Brittain suffered from severe jaw bone deterioration leading to ONJ, a painful disfiguring irreversible condition that now increases her personal risk for other dental complications, severe disability and death. As a result, Plaintiff suffers from mental anguish and diminished enjoyment of life. Further, she has incurred and will continue to incur medical costs for oral and maxillofacial care, including but not limited to hospitalizations, prescription medications, medical care, and treatment supplies. Her ONJ condition has caused and will continue to cause severe pain and disfigurement.

108.    Plaintiff Kathy Brittain has suffered from loss of earnings and/or a diminution in earning capacity as a direct and proximate result of Defendant's foregoing wrongful conduct.

109.    Plaintiff Larry Brittain has suffered from loss of consortium and services as a direct and proximate result of Defendant's foregoing wrongful conduct.

110.    Plaintiffs give notice to Defendant that they are suing for past, present and future damages with respect to each element set out herein. Plaintiffs plead for pre-judgment interest and post-judgment interest as provided by law. Plaintiffs expressly reserve the right to amend this Complaint to plead an increase in damages sought herein.

111.    Plaintiffs are entitled to, and seek herein, the following elements of damage experienced in the past:

      a.     Physical pain and suffering;

      b.     Mental or emotional pain and suffering / mental anguish;

      c.     Loss of capacity for the enjoyment of life / diminished quality of life / physical impairment;

      d.     Reasonable and necessary expenses for medical care, services, and supplies actually given in the treatment of Plaintiff as shown by the evidence;

      e.     Loss of earning capacity, including, but not limited to, actual loss of income, if any;

      f.     Disfigurement; and

      g.     Loss of consortium and services.

112.    Plaintiffs are further entitled to, and seek herein, compensation for the present cash value of the following elements of damage reasonably certain to be experienced by Plaintiffs in the future:

      a.     Physical pain and suffering;

      b.     Mental or emotional pain and suffering / mental anguish;

      c.     Loss of capacity for the enjoyment of life / diminished quality of life / physical impairment;

      d.     Medical expenses reasonably certain to be required in the future;

      e.     Loss of earning capacity, if any;

      f.     Disfigurement; and

      g.     Loss of consortium and services.

**B.    Punitive Damages**

113.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

114.    Defendant's conduct complained of herein was malicious, intentional, outrageous, reckless, done with bad motives, and/or in wanton, willful, conscious, and/or deliberate disregard of Plaintiffs' rights and safety. Defendant's conduct was committed with a reckless indifference to the interest of others, including Plaintiffs, the consuming public, health care professionals and the FDA.

115.    At all times relevant hereto, Defendant actually knew of the defective nature of Fosamax, as set forth herein, and continued to design, manufacture, market, distribute, and sell Fosamax so as to maximize sales and profits at the expense of the public's health and safety and in wanton and willful disregard of the foreseeable serious harm caused by Fosamax. Defendant's conduct exhibits such an entire want of care as to establish that its actions were a result of fraud, maliciousness, recklessness, and/or wanton and willful disregard for the safety and rights of Plaintiffs, as well as the general public and/or consumers of Fosamax.

116.    As a direct and proximate result of Defendant's conduct set out herein, Plaintiffs suffered harm and are therefore entitled to punitive damages so as to punish Defendant and to deter similar conduct in the future.

**C.    Treble Damages**

117.    Plaintiffs repeat, reiterate, and re-allege each and every allegation contained in this Complaint with the same force and effect as if fully set forth herein.

118.    Defendant is liable for treble damages under the consumer protection statutes. Defendant engaged in deceptive, unfair, misleading, unconscionable and/or fraudulent conduct in

violation of consumer protection statutes. Defendant's conduct was committed knowingly, willfully, and/or intentionally within the meaning of such terms as defined in said statutes.

119.    Therefore, Plaintiffs are entitled to and seeks three times the actual damages sustained and such other relief as the court considers necessary and proper, in accordance with the applicable law.

## VIII.

## DEMAND FOR JURY TRIAL

120.    Plaintiffs hereby demand trial by jury in this action of all issues so triable.

## IX.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs request that Defendant be cited to appear and answer herein and that upon final trial of this cause, Plaintiffs have judgment against Defendant for compensatory, punitive and/or treble damages as awarded by the jury, plus interest, prejudgment and post-judgment, reasonable attorneys' fees, filing fees and reasonable costs of court as provided by law, and, for such other and further legal and equitable relief as this Honorable Court deems just and proper.

Respectfully submitted,

THE LAW OFFICES OF HOWARD L. NATIONS

*Howard L. Nations*

Howard L. Nations
4515 Yoakum Blvd.
Houston, Texas 77006-5895
(713) 807-8400
(713) 807-8423 (Telecopier)

**ATTORNEY FOR PLAINTIFFS**